

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF MICHIGAN

MOTION FOR COURT ORDER

GRANTING IMMEDIATE RELEASE TO HOME CONFINEMENT

PURSUANT TO THE CARES ACT

Petitioner, Jimmy Joseph McWherter Fed ID# 51518-039, convicted in Case No. 5:15-cr-20040, now comes Pro-Se, requesting the court order cited above.

Legal Basis For Home Confinement Under The CARES Act

Before the CARES Act was passed, in the original directive to the BOP issued by Attorney General Barr, he instructed the agency to "prioritize the use of your statutory authorities to grant home confinement for inmates" in response to the Corona Virus. After the passing of the Act the BOP was granted greater statutory authority. The original memo offered the BOP several guidelines:

1) Inmate's age and vulnerability to COVID-19 under CDC guidelines.

2) Inmate's security level with priority given to inmates residing in low and minimum security facilities.

3) Inmate's conduct in prison.

1.

4)   Inmate's PATTERN score.

5)   A re-entry plan to prevent recidivism.

6)   Assessment of danger posed by the inmate to the community.

In response to Barr's memo, on April 2, 2020, in <u>U.S. v. Kirk Brennan</u>, Case No. 4:15-cr-0080, S.D. of TX, an emergency motion was filed which stressed Brennan's "impeccable conduct in prison" and a re-entry plan consisting of his step-daughter's willingness to pick him up within four hours of the proposed order for his release and to drive him straight to his Texas residence.  The requested order was granted and PACER shows an amended judgement for time served plus a term of supervised release   The Federal Defender's website indicates that Brennan had previously served only 9 months of a 36 month sentence--25% with 27 months remaining without any deduction for good time.

Recently, the Bureau of Prisons adopted a CARES Act policy which restricts inmate eligibility for home confinement.  According to current policy  an inmate is not eligible for home confinement, regardless of health risks imposed by the threat of the virus, unless:

1)   He has served 25% or more of his sentence with 18 months or less remaining or

2) He has served 50% or more of his sentence.

Apparently neither of these restrictions existed in Barr's original memo nor in the CARES Act itself.

Then, on April 24, 2020, Judge Ronnie Abrams set a precedent which challenges the BOP's current policy, the case is docketed as 1:16-cr-00473-RA, S.D. of New York, in which the defendant Haena Park was sentenced by Abrams for 36 months. Although the judge stated on the record that he considered Park's conduct "egregious", he nevertheless issued an order for her immediate release from the Federal Correctional Facility in Danbury CT. Park had only served 16 months of her 36 month sentence, therefore, the judge's order did not conform to the previously cited BOP policy. His Honor departed from the policy because of mitigating health considerations; Park suffers from severe asthma, a condition which results in a high percentage of death in COVID-19 infectees.

United States vs. Brown, 3:16-CR-00093 (Middle District of Florida)

Corrine Brown, sentenced to 60 months, was serving her sentence in Coleman Federal Prison when her attorney argued that she was especially vulnerable to the coronavirus due to health concerns that put her at high risk of mortality should she contract the virus while incarcerated. These issues included hypertension,

3.

diabetes, a heart murmur, acid reflux, sleep apnea and cataracts. The judge granted her early release to home confinement after serving less than half of her 60 month sentence.

United States vs. Sawicz, 08-CR-287 (ARR) (E D N.Y. April 10, 2020)

Sawicz was charged with counts pertaining to child pornography and pled guilty. Then a second child pornography indictment was issued before Sawicz violated the terms of his supervised release on the original sentence. In August of 2016 the court sentenced Sawicz to five years of imprisonment for a violation of supervised release. Sawicz was imprisoned at Danbury. Sawicz indicated that he had received approval from his unit manager to transfer to a halfway house and that probation had approved his parent's home in Deer Park, NY for his reentry. He also indicated that the BOP's residential reentry office was still processing his reentry application.

On April 5, 2020 he submitted a letter to the warden of Danbury requesting home confinement and citing the CARES Act. On April 9, 2020 he submitted a letter to the Warden of Danbury seeking compassionate release pursuant to the FIRST STEP Act. He cited hypertension and indicated that he takes Lisinopril and baby aspirin. As of the filing of the order for release to home confinement under the CARES ACT, Sawicz had not received a response to either letter.

4.

The government opposed, averring that Sawicz had not exhausted all of his administrative rights with the BOP. "A prisoner exhausts his administrative rights when the BOP fails to bring a motion for compassionate release on his behalf and he exercises all administrative rights to appeal, or after 'the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]'" 18 USC 3582(c)(1)(A).

The court waived the exhaustion requirement in this case. The court found that "Even where [administrative] exhaustion is seemingly mandated by statute or decisional law, the requirement is not absolute." Washington v. Barr, 925 F.3d 109, 118 (2d Cir. 2019). The court went on to say that "A court may waive an administrative exhaustion requirement 'where [exhaustion] would be futile,...where the administrative process would be incapable of granting adequate relief...[or] where pursuing agency review would subject [the person seeking relief] to undue prejudice.'" Further, ""[U]ndue delay, if it in fact results in catastrophic health consequences,"can justify waiving an administrative exhaustion requirement for any of those three reasons." Id. at 120-21.

Here the court determined that the COVID-19 outbreak at FCI Danbury combined with Sawicz's risk of suffering severe complications because of his hypertension justified waiver. "The

5.

delay that the defendant would experience if he had to wait for thirty days to expire before pursuing a motion of compassionate release in this court would put him at significant risk of suffering catastrophic health consequences."

The court also stated that extraordinary and compelling reasons warranted Sawicz's release here by way of COVID-19 pandemic combined with Sawicz s particular vulnerability to complications from COVID-19 because of his hypertension.

The court then evaluated the 3533(a) factors to determine whether to grant a reduction in sentence here. The court acknowledged that this was a serious charge and that Sawicz had already violated one term of supervised release. However, that "do[es] not justify keeping the defendant in prison amidst an outbreak of a potentially deadly virus to which he is particularly vulnerable."

Sawicz's compassionate release motion was granted and his sentence was reduced to time served. He was ordered to be immediately released upon receipt of this order (as opposed to 14 days in quarantine at Danbury) and he was to be sentenced to home confinement that included home incarceration to be enforced by location monitoring. United States vs. Sawicz, 08-CR-287 (ARR)(E.D.N.Y. Apr. 10, 2020)

Atheir Amarrah was convicted in case number 5:17-CR-20464-JEL-EAS-

6.

1 in th Eastern District of Michigan. He had a minimum PATTERN score, an incident repport, and had not completed 50% of his sentence. Judge Judy Levy ordered him released from FCI Loretto, where as of the date of this writing there have been no reported cases of COVID-19, as a preventative measure due to his diagnosis of asthma.

Lemarcus Kelly case No. 3:13-CR-59 Southern District of Mississippi. Kelly pled guilty to one count of possession of an unregistered destructive device. He also admitted to shootin a firearm into an "unoccupied building". Kelly is 28 years old and has no underlying health issues. Kelly filed a motion with the court siting extraordinary and compelling reasons i.e. the potential contraction of COVID-19 The court ordered him released from custody immediately and ordered him to self-isolate for 14 days at his brother's home or another appropriate place.

In a bevy of other rulings pursuant to 18 USC 3582 (C)(1)(A), district courts have actually reduced the sentences of at-risk inmates and ordered immediate release to home confinement.

United States v. Robinson, (No. 18-cr-00597-RS-1)(ND Cal. Apr. 27, 2020); United States v. Gorai, (No. 2:18-CR-220 JCM (CWH))(D Nev. Apr. 24, 2020; United States v Coles, (No. 00-cr-20051)(CD Ill. Apr. 24, 2020); United States v. Thorson,(No.5:16-CR-00017-TBR)(WD Ky. Apr. 24, 2020); United States v. Williams, (No. 3:17-cr-121-(VAB)-1)(D Conn. Apr. 24, 2020); United States v. Park,

7                                    7.

(No. 16-cr-473 (RA))(SDNY Apr. 24, 2020) United States v. Walls, (No. 92-80236)(ED Mich. Apr. 23, 2020); United States v McWherter, No. 4:14-CR-00576)(SD Tex. Apr. 23, 2020); United States v. Curtis, (No. 03-533 (BAH))(DDC Apr. 22, 2020);United States v. Bess, (No. 16-cr-156)(WDNY Apr. 22, 2020); United States v. Sanchez, (No 18-cr-00140-VLB-11)(D Conn. Apr. 22, 2020; United States v. Pabon, (No. 09 CR 282)(E.D. Pa., May 4, 2020);United States v. Foster, (No. 2:19-cr-00117-RFB)(D. Nev ,May 1, 2020); United States v. Kelly, (No. 3:13-CR-59-CWR-LRA-2)(S.D. Miss.,May 1, 2020); United States v. Montanez,(No. 15-CR-122-FPG)(W.D. N.Y.,May 5 2020); United States v. Echevarria, (No. 3:06-cr-269 (MPS))(D. Conn.,Mauy 4, 2020); United States v. Quintero, (No. 08-CR-6007L)(W.D. N.Y. May 6, 2020); United States v Ardila, (No 3:03-cr-264 (SRU))(D. Conn. May 1, 2020); United States v Fischman, (No. 16-cr-00246-HSG-1)(N.D. Cal.,May 1, 2020); United States v. Field (S.D. N.Y. 2020) United States v. Field, (No 18 CR-426 (JPO))(S.D. N.Y., May 4, 2020); United States v. Howard, (No. 4:15-CR-00018-BR)(E D. N C., May 6, 2020); United States v. Reid, (No. 17-cr-00175-CRB-2)(N.D. Cal.,May 5, 2020); United States v Jimmy Josephson, (No. 17-cr-482)(S.D. N.Y., May 1, 2020); United States v. Portes, (No. 86 Cr. 1124 (JFK))(S.D. N.Y.,May 1, 2020; United States v. Soto, (No. 18-cr-10086-IT)(D. Mass. May 1, 2020); United States v. Etzel, (No. 6:17-cr-00001-AA)(D Ore May 1, 2020); United States v. Lacy, (No. 15-cr-30038)(CD Ill. May 1, 2020); United States v. Rivera, (No. 86 Cr. 1124 (JFK))(SDNY May 1, 2020); United States v Peters, (No. 3:18-cr-188 (VAB))(D. Conn. May 1, 2020); United States v. Pinkerton,

(No 15-cr-30045-3)(CD Ill. Apr. 30, 2020); United States v. Lucas, (No. 15-CR-143)(WDNY Apr. 29, 2020); United States v. Dunlap, (No. 1:02cr165-1)(MD NC Apr. 29, 2020); United States v. Saad, (No. 16-20197)(ED Mich. Apr. 29, 2020); United States v. Harper, (No. 7:18-cr-00025)(D Conn. Apr. 28, 2020); United States v. Mel, (No. TDC-18-0571)(D Md Apr. 28, 2020)

## Jurisdiction

Although Judge Abram's order is not circuit precedent, in the very least it demonstrates that jurisdiction under the CARES Act is properly assumed in the district court for the release to home confinement of at-risk inmates, even when the time served on their sentences does not conform to current BOP policy.

## Background

In the camp where I am located, Loretto PA, the prison is not following the instructions sent to them by the Attorney General. As of April 1, 2020, there were 71 inmates in the camp. On April 7th and 8th, 10 inmates who met the BOP's initial qualifications for release to home confinement were processed by the case manager, signing documents for release to home confinement. These 10 all had a "minimum" Pattern Score and all had served over 50% of their sentences. Then on April 20th, the BOP issued a memo stating in part

9.

"The inmate's whose score under Pattern with inmates who have anything above a minimum score not receiving **priority treatment** under this memorandum."

On April 23rd the BOP issued another memo stating in part:

"in order to prioritize its limited resources BOP has generally **prioritized** for home confinement who served a certain portion of their sentences."

On April 30, 2020, the Warden issued another memo which was in response to inmates requesting compassionate release. This was a blanket denial for all requests for compassionate release in regards to the COVID 19 issue. The following is a transcription of the relevant part.

"RIS requires that you meet criteria listed in Program Statement 5050.50. There are several factors for consideration which have different criteria: Terminal medical condition, debilitated medical condition, Elderly offender, elderly offender with medical conditions, other elderly offender, death or incapacitation of minor child caregiver, and death or incapacitation of spouse or partner. For terminal medical condition, you have to have a diagnosis for a terminal illness or life expectancy of 18 months or less. For debilitated medical condition, you have to be unable to function in a correctional setting. Health Service reviews your records in accordance with Program Statement 5050.50 and makes the

medical determination of whether or not you meet the medical conditions."

Petitioner does not meet the above conditions. Even though this is clearly a blanket denial by the Warden, Petitioner has also submitted an Inmate Request for Compassionate Release Consideration Form to the Warden.

The Warden denied his request for compassionate release. (See exhibit 1).

Please note: the BOP sends memos to inmates via an internal bulletin board on the inmate computers. Memos can be printed out by the inmate for further review. However, these three memos have been specifically blocked by the BOP to prevent any hard copy printout. This prevents an inmate from first printing the memo and then distributing it to the public; it also prevents an inmate from using the memo as an exhibit attached to a legal motion. Therefore, Petitioner cannot attach them as exhibits but can only quote the relevant parts.

The Loretto staff has not processed a single person who falls outside the BOP's arbitrary guidelines of 50% of sentence served and a minimum Pattern score. BOP staff including the warden have informed inmates that they will not even be considered for direct release to home confinement if they do not have these two criteria met. So, the BOP is not even following its own arbitrarily created

11.

guidelines of prioritization. Let alone the Attorney General's broader recommendations.

Since the initial processing which was completed on April 7th and 8th, there has been only a few Loretto inmates processed for home confinement under the CARES Act and these inmates were minimums and processed when they reached the 50% of sentence completed threshold.

To summarize, the original 10 inmates were processed in two days; all of those inmates are already home. A handful of inmates have been processed in the following weeks. No other inmate has been processed. So the facts make it apparent that by the phrase, "...prioritized for home confinement", BOP officials are understanding this to mean a <u>singular</u> and <u>final</u> choice of a few at the exclusion of any further consideration of others. This is in fact how Loretto officials have explained the BOP's restricted interpretation of the CARES ACT; age, medical condition, no disciplinary reports issued over the last twelve months--- and none of that matters now.

The fact that the Petitioner is being held in a camp without a fence can only mean that he is no threat to anyone. It's my contention that this factor alone qualifies me as a fitting candidate for home confinement under the CARES ACT. As for the time remaining until the completion of my sentence, Judge Abrams' decision to release Haena Parks without regard for time served,

12.

the judge giving greater weight to other considerations, is very good evidence that it lies within the jurisdiction of the district court to intervene, ordering the BOP to release me to home confinement even though I do not qualify under the BOP policy regarding percentage of sentence served.

I have a minumum Pattern Score, I am currently in a Camp, in the total time of my incarceration I have had no incident reports, and I am at high risk if I contract COVID-19. With the exception of the fact that I have served less than 50% of my sentence I meet all of the BOP's arbitrary criteria. Having completed 50% of my sentence is not a requirement of the Attorney General it is merely an arbitray criteria created by the BOP.

I think it has been proven that COVID-19 does not discriminate and facts support that nursing homes and prisons have the highest infection rates due to the impossibility of social distancing.

### Prayer For Relief

Given that current BOP policy precludes any possibility of home confinement for Petitioner's protection from possible death if infected with COVID-19 since he has yet to meet the arbitrary BOP guidelines and given that there now exists a legal basis by which the court may assume jurisdiction in ordering immediate release to home confinement, the Petitioner prays that the court will issue an ORDER to the BOP requiring the immediate release of

13.

Jimmy Joseph McWherter, FED ID#51518-039 to home confinement under the CARES Act. Without granting of the requested order, given current BOP policy, the Petitioner will be resigned to continually suffer under the threat of possible death.

### Other Compassionate Release Factors

Petitioner's wife is considered and essential worker and must work 6 days a week (50-56 hours). In addition to trying to home school two small children she is the primary caregiver for her father (dimentia and COPD) and her mother (lung cancer and removal of one lung). In addition, Petitioner's wife assists in caring for Petitioner's 75-year-old widowed mother. Petitioner will be able to assist his wife in caring for her parents, his mother and their young children.

In conclusion, the Petitioner has a suitable residence for home confinement at his in laws 23324 Recreation Street, Saint Clair Shores MI 48082. In addition Petitioner currently has a job at Brandmotion South MI as a product development manager which was his employment prior to incarceration.

### Affidavit Of Fact

I, Jimmy Joseph McWherter, FED ID# 51518-039, do herein declare under penalty of perjury pursuant to 28 USC 1746 that all statements made in the enclosed motion are true and correct to the

14.

best of my ability to recall.

Executed this 6th day of June, 2020

Jimmy Joseph McWherter

