UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

United States of America,                  No. 15-cr-20040
                    Plaintiff,

v.                                         Hon. Judith E. Levy

Jimmy Joseph McWherter,
                    Defendant.

---

**United States' Opposition and Response to Defendant
McWherter's Motion for Reconsideration [ECF 273], and
Emergency Motions for Ruling on Motion for Reconsideration
[ECF 281 & ECF 282]**

---

Jimmy Joseph McWherter pleaded guilty to being a leader within a large-scale marijuana drug trafficking conspiracy in violation of 21 U.S.C. §§ 841 and 846, and money laundering in violation of 18 U.S.C. §§ 1956 and 1957. (ECF No. 97, PageID 1003, 1019; ECF No. 164, PageID 1927). The Court sentenced McWherter to 47 months' imprisonment on Count 1 and 3 to run concurrently. (ECF No. 164, PageID 1927; Exhibit 1, McWherter BOP Public Information Inmate Data, at 2).

McWherter began serving his 47-month sentence on August 14, 2019. (Exh. 1, Public Information Inmate Data, at 2, 3). Less than 10

1

months later, McWherter filed a *pro se* motion which this Court

construed as a motion for both home confinement and compassionate

release, and as to which the Court appointed counsel to represent

McWherter "unless terminated by (1) Order of the Court, (1)

appointment of substitute counsel, or (3) appearance of retained

counsel." (ECF No. 268, PageID 4662; ECF 265). After considering the

*pro se* filings by McWherter and later briefing by the Government and

appointed counsel, the Court denied McWherter's motion on November

3, 2020. (ECF NO. 268, PageID 4668).

　　In its written order, the Court acknowledged counsel's

representations that McWherter had "suffered from obesity in the past,"

but then went on to more critically find that "evidence regarding

Defendant's *current* height, weight, BMI" was not presented, and thus,

"Defendant has not established extraordinary and compelling reasons

for compassionate release." (ECF No. 268, PageID 4668, emphasis

added; *cf.*, *United States v. Goston*, No. 15-20694, 2020 WL 5993235, at

*2 (E.D. Mich. Oct. 9, 2020) ("With a ten-month-old diagnosis of a

borderline obesity condition, and with no evidence that Defendant is

currently obese," Court could not conclude compassionate release was

appropriate)). Here, even McWherter's mother and ex-wife "were unsure of his current weight status." (ECF No. 265, PageID 4641). The Court invited McWherter, however, to renew his motion, "[s]hould Defendant's conditions change." (ECF No. 268, PageID 4668).

Rather than renewing his motion with evidence demonstrating that his *current* medical conditions support compassionate release—and despite having counsel—in early and mid-December 2020 McWherter filed a series of *pro se* motions asking this Court to reconsider its previously issued ruling based upon a past "error of fact . . . that may have changed the outcome of the proceeding," and to do so immediately, on an 'emergency' basis. (ECF No. 273; ECF No. 281; ECF No. 282). In the alternative, McWherter asks the court to construe his motion as a request to alter or amend judgment to correct past factual errors pursuant to Federal Rule of Civil Procedure 60(b)(6).[1] In each regard,

---

[1] Federal Rule of *Civil* Procedure 60(b) does not apply to *criminal* proceedings. Federal Rule of Civil Procedure 1 provides that "[t]hese rules govern the procedure in the United States district courts in all suits of a *civil* nature . . . ." Fed.R.Civ.P. 1, emphasis added. Both the relief McWherter seeks (release from prison) and his grounds for seeking it (§ 3582(c)(1)(A)) are *criminal* in nature and on its face, Federal Rule of Civil Procedure 60(b) does not apply. *United States v. Moon*, 527 Fed.Appx. 473, 474 (6th Cir. 2013) (neither Fed.R.Civ.P. 60(b) nor Fed.R.Civ.P. 59(e) applies to criminal proceedings). "Rule 60(b) is not applicable to criminal proceedings . . . and *may*

McWherter asserts that an "error of fact" occurred because the Court was not presented with, and did not consider, portions of McWherter's BOP medical intake records from August 2019 (now attached to his motion) indicating McWherter suffered from obesity when he began serving his sentence.

## Argument

## I.    McWherter's claims do not call for hybrid representation.

The constitutional right to assistance of counsel does not extend to motions for post-conviction relief, and no statutory authority establishes that a defendant is entitled to counsel for § 3582(c) proceedings. *United States v. Ryerson*, 2020 WL 3259530, at *2 (E.D. Tenn. June 16, 2020) (examining in the context of a motion for compassionate release); *see also, United States v. Harris*, 568 F.3d 666, 689 (8th Cir. 2009) ("agree[ing] with the six circuits that have held that there is no right to appointed counsel in sentence modification proceedings under § 3582(c)").

On those occasions when a court does appoint counsel, the

---

not be used to disturb a criminal sentence or conviction." *United States v. Gibson*, 424 Fed.Appx. 461, 464 (6th Cir.2011), emphasis added; *see also, United States v. McCalister*, 601 F.3d 1086, 1087-1088 (10th Cir. 2010); *United States v. Bender*, 96 Fed.Appx. 344, 345 (6th Cir.2004).

4

question of whether to permit a defendant to represent himself, as well as utilize the services of an attorney, in "hybrid representation," is a matter committed to the sound discretion of the trial court. *United States v. Mosely*, 810 F.2d 93, 97-98 (6th Cir. 1987). There is no right, constitutional or otherwise, to simultaneous self-representation and representation by counsel ("hybrid representation"). *Id.* at 97. The competence and professionalism of the defendant's attorney, the existence of sufficient time for defendant and the attorney to consult over strategy, and the avoidance of potential confusion in proceedings are all appropriate considerations to inform a court's exercise of that discretion. *See, United States v. Green*, 388 F.3d 918, 923 (6th Cir. 2004).

McWherter is represented by trained, competent, professional counsel in this matter, and pursuant to the Bureau of Prison's "modified operations" plan currently in place, has the ability to consult with counsel over strategy related to the instant litigation. In addition to other measures that BOP has implemented to ensure inmates are able to maintain communication during the pandemic, the Bureau of Prisons has increased inmates' telephone allowance to 500 minutes per month

5

at no charge, and legal visits are accommodated upon request. *See,* BOP Modified Operations. Though he seemingly did not communicate with counsel before filing his recent motions, McWherter's ability to communicate and correspond with counsel, as well as friends and family, about his litigation is both implied and expressly referenced in his motion for reconsideration. (ECF No. 273, PageID 4698).

Given the opportunity, appointed counsel might have discussed with McWherter the seeming improbability that prison intake records that were outdated when the court considered his original motion, would adequately support reconsideration or a finding of factual error given the Court's prior acknowledgement of counsel's statement that "Defendant suffered from obesity in the past," and subsequent emphasis on the lack of evidence concerning "Defendant's *current* height, weight, BMI" as a basis for its ruling. (ECF No. 268, PageID 4668, emphasis added). In doing so, counsel might have helped avoid, or at least minimize, potential confusion associated with McWherter's claims. *See, Green*, 388 F.3d at 923.

Inasmuch as McWherter is already represented by trained, competent, professional counsel, the Government believes both

McWherter and the Court would benefit from counsel determining whether, when, and how to present future claims McWherter wishes to bring to the Court's attention, rather than permitting McWherter to continue with hybrid representation moving forward.

## II.   Both substantively and procedurally, McWherter's motion for reconsideration should be denied.

Local Rule 7.1 permits a party to move for "rehearing or reconsideration . . . within 14 days after entry of the judgment or order." E.D. Mich. L.R. 7.1(h)(1). The moving party must "demonstrate a palpable defect by which the court and the parties and other persons entitled to be heard on the motion have been misled" and then "show that correcting the defect will result in a different disposition of the case." E.D. Mich. L.R. 7.1(h)(3). "A 'palpable defect' is 'a defect that is obvious, clear, unmistakable, manifest, or plain.' " *United States v. Lockett*, 328 F.Supp.2d 682, 684 (E.D.Mich.2004). "Generally, and without restricting the Court's discretion, the Court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the Court, either expressly or by reasonable implication." E.D. Mich. L.R. 7.1(h)(3).

In its order denying McWherter's motion for home confinement, this Court concluded it did not have jurisdictional authority to grant McWherter's request for an order requiring BOP to release him to home confinement under the CARES Act—which continues to be the case. (ECF No. 268, PageID 4664; ECF No. 249, PageID 4353-54).

Construing his motion as one also seeking compassionate release, the Court separately examined the various bases raised in McWherter's original *pro se* motion and concluded none of them alleged or indicated McWherter suffers from an underlying medical condition that places him at increased his risk of severe illness from Covid-19.[2] (ECF No. 268, PageID 4662 n.1, 4665-8).

More expansively, with regard to the Court's files, the submitted exhibits, and even the reply brief of defense counsel and factual representations of the parties, the Court comparably observed, "Nor does the current record reveal any conditions— such as moderate to

---

[2] McWherter's motion (1) discussed compassionate release in the context of the Covid-19 pandemic, (2) cited compassionate release cases, (3) described conditions of McWherter's confinement in his camp facility, (4) recounted his rejected request to BOP for compassionate release, and (5) listed "Other Compassionate Release Factors" specific to McWherter's wife and family. (ECF NO. 249).

severe asthma, hypertension, liver disease, or Type 1 diabetes—that may place [Defendant] 'at an increased risk for severe illness.'" (ECF No. 268, PageID 4668). "While Defendant's appointed counsel indicates that Defendant has suffered from obesity in the past and has a family history of diabetes, his reply does not offer any evidence regarding Defendant's *current* height, weight, BMI, or relevant blood sugar levels." *Id.,* emphasis added.

McWherter's motion for reconsideration does not allege or identify any error in the Court's presently challenged order that is "obvious, clear, unmistakable, manifest, or plain," nor does it suggest that the Court and parties have been misled. Rather, the arguments and evidence McWherter now seeks to present remain generally the same as those before the Court when it considered his motion and proffered evidence that McWherter "suffered from obesity in the *past.*" *Cf., Nagle Indus., Inc., v. Ford Motor Co.*, 175 F.R.D. 251, 255 (E.D. Mich. 1997) ("motions for reconsideration are not the proper vehicle to relitigate issues previously considered") (internal quotations and citation omitted).

9

McWherter's now proffered medical records documenting his height and weight at prison intake in August 2019 offer additional detail, but no contradiction, about an issue that has already been raised and considered. As such, McWherter has not identified a defect, the correction of which would result in a different disposition of the case, and his motion for reconsideration should be denied.

## III.  If liberally construed as a renewed motion for compassionate release, McWherter's motion should still be denied.

Even if McWherter's motion for reconsideration were construed as a renewed motion for compassionate release, for a host of reasons the motion should still fail.

### A.  McWherter has not satisfied the statutory exhaustion requirement, thus binding authority would prohibit the Court from granting release.

As an initial concern, from the very outset the government respectfully notes that a renewed motion by McWherter for compassionate release based on his medical conditions, much like his originally construed motion, would be lacking due to his failure to satisfy the statutory exhaustion requirement of 18 U.S.C. § 3582(c).

There are two key questions of law in compassionate release cases:

10

(1) whether the defendant has satisfied the statutory exhaustion requirement; and, (2) "whether extraordinary and compelling reasons, as well as the defendant's own history and characteristics, warrant a reduction of the defendant's sentence." *United States v. Amarrah*, 458 F. Supp. 3d 611, 615 (E.D. Mich. 2020) (citing 18 U.S.C. § 3582(c)).

With regard to the first question, the compassionate release statute provides that a Court may adjudicate a compassionate release request "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of the request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A)(i).

Significantly, the Sixth Circuit has interpreted this language to prohibit judicial review of a compassionate release motion unless the defendant has either (1) completed the BOP administrative release request process; or (2) waited to file a motion in federal court until 30 days after the BOP warden received the administrative request. *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). More particularly though, the requirements of Section 3582(c)(1)(A) also mean that an

11

inmate may not move for compassionate release on a different ground than the one he raised during the administrative process.

The whole point of § 3582(c)(1)(A)'s exhaustion requirement is to ensure that the Bureau of Prisons has the opportunity to evaluate and consider an inmate's request first, while allowing the inmate to seek relief in court if the Bureau of Prisons denies or fails to act upon the request. *Alam*, 960 F.3d at 835–36. So when "the factual basis in the administrative request and the motion before the court are different, a defendant does not satisfy the exhaustion requirement because he does not give the BOP an opportunity to act on the request before [he] brings his request to the courts." *United States v. Asmar*, 465 F.Supp.3d 716, 719 (E.D. Mich. 2020); *accord United States v. Mogavero*, No. 15-00074, 2020 WL 1853754, at *2 (D. Nev. Apr. 13, 2020) ("Proper exhaustion necessarily requires the inmate to present the same factual basis for the compassionate-release request to the warden."); *United States v. Jenkins*, 2020 WL 1872568, at *1 (D. Neb. Apr. 14, 2020); *United States v. Valenta*, 2020 WL 1689786, at *1 (W.D. Pa. Apr. 7, 2020).

Although district courts have split on this issue, the best reading of Sixth Circuit law is that § 3582(c)(1)(A) requires "issue-specific

exhaustion." As the Sixth Circuit has explained, an exhaustion statute "written in more general terms" commands "issue exhaustion if an agency's rules so require." *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 746–47 (6th Cir. 2019) (citing *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006)); *accord Cuevas-Nuno v. Barr*, 969 F.3d 331, 334–35 & n.4 (6th Cir. 2020).

Section 3582(c)(1)(A) is just such a statute, and the agency's rules here require an inmate to identify "[t]he extraordinary or compelling circumstances that the inmate believes warrant consideration" for compassionate release. 28 C.F.R. § 571.61(a)(1). Thus, an inmate seeking relief based on a combination of Covid-19 and a particular medical condition or conditions must first make *that* specific request to the Bureau of Prisons before seeking relief in court. *Island Creek Coal Co.*, 937 F.3d at 746–47; *see Alam*, 960 F.3d at 834–36 (emphasizing the issue-specific nature of exhaustion under § 3582(c)(1)(A)).

McWherter has not complied with § 3582(c)(1)(A)'s mandatory exhaustion requirement. When McWherter submitted his request for compassionate release to BOP dated May 15, 2020, he did not list or identify *any medical concerns or medical conditions whatsoever*. Rather,

13

the only explanation McWherter provided for his request was the statement, "I do not want to contract the Corona virus in prison due to being here." *See*, Exhibit 2, McWherter BOP RIS Request.

Not surprisingly, the consideration and response provided by BOP in its written denial dated June 1, 2020, only addressed the singularly stated reason provided by McWherter, and neither substantively nor procedurally weighed, nor had the opportunity to weigh, the medical concerns and conditions McWherter now seeks to present to the Court. *See*, Exhibit 3, McWherter BOP RIS Denial.

"Where the factual basis in the administrative request and the motion before the court are different, a defendant does not satisfy the exhaustion requirement because he does not give the BOP an opportunity to act on the request before Defendant brings his request to the courts." *Asmar*, 465 F.Supp.3d at 719 (defendant's administrative request did not reference any of the health conditions raised as the basis for compassionate release); *see also*, *United States v. Hicks*, 2020 WL 4791204, at *2 (E.D. Mich. Aug. 17, 2020) (defendant's request to BOP did not present the extraordinary and compelling circumstances his motion later relied on, he thus failed to exhaust).

14

Here, McWherter has failed to satisfy the exhaustion requirement.
If his instant motion for reconsideration is construed to instead be a
renewed motion for compassionate release, it should be dismissed for
failure to exhaust. *Alam*, 960 F.3d at 836.

## B.   McWherter has not shown "extraordinary and compelling" reasons for compassionate release, and the 18 U.S.C. § 3553(a) factors weigh against him.

Even if McWherter's motion is recharacterized but not dismissed
for failure to exhaust, it should still fail because McWherter's medical
records do not demonstrate extraordinary and compelling reasons for
compassionate release, and he has not presented any other evidence to
support his motion.

As this Court explained the first time it thoroughly examined,
reviewed, and denied McWherter's request for a reduction in sentence
via compassionate release, after considering exhaustion, the second key
question of law in compassionate release cases is, "whether
extraordinary and compelling reasons, as well as the defendant's own
history and characteristics, warrant a reduction of the defendant's
sentence." *Amarrah*, 458 F. Supp. 3d at 615 (citing 18 U.S.C. § 3582(c)).

Resolving the merits of a compassionate-release motion thus

15

involves a "three-step inquiry:" a district court must (1) "find that extraordinary and compelling reasons warrant a sentence reduction," (2) "ensure that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) "consider all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." *Elias*, ___ F.3d ___, No. 20-3654, 2021 WL 50169, at *2 (6th Cir. Jan. 6, 2021); 18 U.S.C. § 3582(c)(1)(A).

In *Elias*, 2021 WL 50169, at *2, the Sixth Circuit held that USSG § 1B1.13 is not an "applicable" policy statement for defendant-initiated motions for compassionate release. The government disagrees with that holding and preserves for further review its argument that § 1B1.13 remains binding. But, given the Sixth Circuit's holding in Elias, controlling circuit precedent now forecloses that argument before this Court.

Even so, McWherter has not satisfied the statutory requirement of actively showing that "extraordinary and compelling reasons" warrant a sentence reduction. That statutory requirement means that a defendant must show reasons for release that satisfy two strict criteria. 18 U.S.C. § 3582(c)(1)(A)(i). The defendant's reasons must be "extraordinary"—

16

meaning exceptional or uncommon. *United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. Apr. 22, 2020); *United States v. Sapp*, No. 14-CR-20520, 2020 WL 515935, at *3 (E.D. Mich. Jan. 31, 2020). The reasons must also be "compelling"—meaning "so great that irreparable harm or injustice would result if the relief is not granted." *Sapp*, 2020 WL 515935, at *3. A defendant must establish both criteria to satisfy the statute's eligibility threshold. McWherter has not established either.

### 1. McWherter has not shown "extraordinary" reasons to justify his early release.

As the Court is aware, the CDC maintains a running list of conditions that are known to place someone at a higher risk of severe illness from Covid-19. *See,* CDC Risk Factors (as updated) (identifying the confirmed medical conditions that increase someone's risk from Covid-19). McWherter's records do not establish that he has any of those conditions. The medical records do not show that he currently suffers from any underlying medical condition—such as cancer, a serious heart condition, COPD, obesity, or sickle cell disease—that place him at an increased risk of severe illness.

Here, just as was the case when the Court previously reviewed

this matter, McWherter has not provided evidence showing that he

*presently* has a condition that places him at higher risk of severe illness

from COVID-19, much less provided adequate evidence of its present

severity. *See, United States v. Lotts*, 2020 WL 835298 (D.N.M. Feb. 20,

2020) (court denied motion where the defendant did not provide

evidence substantiating his alleged conditions or their severity); *United

States v. Harrington*, 2020 WL 3791531 (E.D. Mich. Jul. 7, 2020)

(denying compassionate release based on failure to exhaust remedies

while also noting the defendant failed to support his alleged medical

conditions); *see also, United States v. Shorter-Hayes*, 2020 WL 3961600

(E.D. Mich. Jul. 13, 2020) ("[T]here is no way to discern [defendant's]

condition from the present record, let alone its severity," where

defendant's compassionate release claim was only supported by a dated,

15-month-old medical record that cited 'respiratory disease' and had a

3-month 'limitation date').

　　McWherter's instant motion describes and attaches "medical

records showing his height, weight, BMI and other factors that render

him obese per the CDC guidelines." (ECF No. 273, PageID 4699, 4702,

4705). Crucially, those records are excerpts from McWherter's BOP

18

intake exam *when his incarceration first began*, nearly eighteen months ago, and are simply consistent with previously considered statements by McWherter's counsel that McWherter "suffered from obesity in the past." None of these records provided by McWherter reveal his "current [or even recent] height, weight, BMI" composition, which this Court observed was similarly lacking when it last reviewed McWherter's request. (ECF No. 268, PageID 4668).

Pointedly, McWherter's current BOP medical records do not yield any more concrete answers concerning his current "height, weight, BMI" composition. *See*, Exhibits Four, Five and Six (McWherter 2019, 2020, and 2021 BOP medical records, filed under seal). The records neither confirm nor foreclose the possibility that McWherter presently suffers from obesity. Nor do they disclose which of several equally plausible BMI categories McWherter now falls within—nearly eighteen months after beginning the rigors of incarceration.

Although those records reveal McWherter has tested negative for coronavirus on three different occasions, including as recently as last month (*see,* Exhibit Five, McWherter 2020 BOP medical records, filed under seal, at p. 1, 2, 4, 14, 16, 19, 22), and that each year during flu

season McWherter has refused to be vaccinated against the flu (*see*, Exhibit Five, McWherter 2020 BOP medical records, filed under seal, at p. 15, 27; Exhibit Four, McWherter 2019 BOP medical records, filed under seal, at p. 33, 51), the records simply do not appear to document any further examination of McWherter's height/weight composition since August 2019 (*see,* Exhibit Four, McWherter 2019 BOP medical records, filed under seal, at p. 14, 23).[3]

Consistent with McWherter's overall good health that is depicted by his records, McWherter's medical documents reflect statements to BOP medical personnel indicating he does not suffer from any serious medical condition on BOP's lists, such as diabetes, hypertension or sickle cell anemia, and does not have any cardiovascular or respiratory problems. (*See*, Exhibit Four, McWherter 2019 BOP medical records, filed under seal, at p. 5, 12, 36). Likewise consistent with his seemingly overall good health and, at age 43, relatively young age, McWherter's medical records indicate that he works seven hours a day, and has been cleared for work, without restriction, since August 2019. (*See*, Exhibit

---

[3] Although McWherter's annual medical record summary for each year lists obesity as a current health problem, in each instance the entry solely stems from and cites his intake examination/diagnosis in August 2019.

Five, McWherter 2020 BOP medical records, filed under seal, at p. 5, 28, 29; Exhibit Four, McWherter 2019 BOP medical records, filed under seal, at p. 34). Again, most significantly, the medical records do not show that McWherter currently suffers from any underlying medical condition that increases his risk of suffering severe illness due to Covid-19.

As this Court previously explained and held, "Within the context of the COVID-19 pandemic, a '[d]efendant must show that he *has* underlying medical conditions that increase his risk of a dire outcome from COVID-19." (ECF No. 268, PageID 4667, emphasis added, citing, *United States v. Gandy*, No. 15-20338, 2020 WL 4592904, at *4 (E.D. Mich. Aug. 11, 2020), *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)). Here, McWherter still has not done so.

As such, McWherter has not shown that his reasons for release are "extraordinary." Everyone in our society faces a risk from Covid-19 right now. Over 425,000 Americans have died from this terrible disease. So as the Sixth Circuit has stressed, "generalized fears of contracting Covid-19, without more," do not justify compassionate release. *United States v. Jackson*, 2020 U.S. App. LEXIS 32269, at *6 (6th Cir. Oct. 13,

2020); accord *United States v. Bothra*, No. 20-1364, 2020 WL 2611545, at \*2 (6th Cir. May 21, 2020); *United States v. Ramadan*, No. 20-1450, 2020 WL 5758015, at \*2 (6th Cir. Sept. 22, 2020).

Also, the Bureau of Prisons has worked diligently to implement precautionary measures reducing the risk from Covid-19 to McWherter and other inmates. See *Wilson v. Williams*, 961 F.3d 829, 833–34 (6th Cir. 2020).  Strikingly, BOP's precautionary and ameliorative measures seem to have helped *dramatically* reverse the uptick in COVID-19 cases at FCI Loretto that McWherter highlighted in in his twin emergency motions requesting an immediate ruling and relief—suggesting that measures taken by that facility have likely improved the overall health of its inmates.

Although McWherter reported both FCI Loretto and FPC Loretto briefly saw an increase in the number of COVID-19-positive cases among its inmates and staff in early December when COVID-19 cases were comparably ramping up across the country—rising to over 300 confirmed cases as related by McWherter—for some time now those numbers have since fallen remarkably, and as of *today,* January 28, 2021, there is *just one (1) COVID-positive inmate* between both FCI

Loretto and FPC Loretto, and sixteen (16) COVID-positive staff members, drastically less than the COVID-positive numbers McWherter describes, and on which his emergency motions were premised. *See*, https://www.bop.gov/coronavirus/, last visited January 28, 2021. Meanwhile, quite thankfully, throughout the present pandemic there have been no deaths at FCI Loretto or its camp. *Id.*

Additionally, since the filing of McWherter's motion, vaccinations against Covid-19 have begun to be distributed, and across the country Americans are broadly being inoculated, including staff and inmates within the BOP. *See* CDC Covid-19 Vaccine Tracker. The BOP has already administered 28,514 doses of the vaccine to 21,081 staff members and inmates, and while the precise timing of each inmate's vaccination will depend on many factors, the BOP is working swiftly to vaccinate all inmates who consent to receive the vaccine. Until then, the BOP's prompt handling and suppression of the uptick of Covid-19 cases at FCI Loretto described by McWherter provides strong insightful evidence of BOP's ability to well and competently manage both that facility and McWherter's care, particularly in light of McWherter's repeated negative tests for Covid-19 during and around that same

period.

"[T]he mere existence of Covid-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *Raia*, 954 F.3d at 597; *cf. Wilson*, 961 F.3d at 845.

Because McWherter has not shown that he has a chronic condition which the CDC has confirmed will cause him to face an increased risk of severe illness from Covid-19, his reasons for release are not "extraordinary" and instead present only a "generalized fear[] of contracting Covid-19." *Jackson*, 2020 U.S. App. LEXIS 32269, at *6.

### 2.   McWherter has not established "compelling" reasons for his release.

McWherter also has not shown that his reasons for release are "compelling." In the pretrial-release context, the Sixth Circuit has already addressed what qualifies as a "compelling" reason for release based on Covid-19. *United States v. McGowan*, No. 20-1617, 2020 WL 3867515, at *2 (6th Cir. July 8, 2020); *Bothra*, 2020 WL 2611545, at *2. That analysis considers (1) the "original grounds" for the defendant's incarceration; (2) the "specificity" of his "stated Covid-19 concerns"; (3)

24

the extent to which the proposed release plan would "mitigate or exacerbate" his risk from Covid-19; and (4) the risk from Covid-19 that his release would pose to others. *McGowan*, 2020 WL 3867515, at *2. In *Bothra*, for instance, the defendant was in his 70s and "had health issues rendering him more vulnerable to contracting [Covid-19]." 2020 WL 2611545, at *2. But he was a flight risk, had orchestrated a large and complex fraud scheme, and was detained at a facility that had very few cases of Covid-19. *Id.* The Sixth Circuit thus held that his circumstances did not present a "compelling" reason for release. *Id.*

The circumstances presented by McWherter are even less compelling. The "original grounds" for McWherter's incarceration were his participation and leadership in a drug and money laundering conspiracy in which McWherter literally spanned the country with his travel and drug trafficking, and which involved extraordinary quantities of marijuana. *McGowan*, 2020 WL 3867515, at *2. And unlike the pretrial defendant in *Bothra*, McWherter was *convicted* of his offense—not just accused of it. So the justice system's "essential" interest in finality weighs far more strongly against McWherter's

25

release than it did the defendant's release in *Bothra. Teague v. Lane*, 489 U.S. 288, 309 (1989).

Meanwhile, with regard to the "specificity" of McWherter's COVID-19 concerns, his reported concerns to both BOP and this Court have not been very specific at all; yet at age 43, McWherter is a healthy, relatively young man without any currently established, particularized risk from COVID-19, who is housed in a correctional facility that has seen a tremendous drop in COVID-positive cases since the filing of McWherter's motion. In their totality, McWherter's parallel drug and money laundering convictions, and his underlying conduct exploiting his co-defendant wife and a co-defendant employee as part of his crimes, combine with the drastically diminished number of COVID-19 cases at McWherter's correctional facility and the already significantly reduced sentence that he has received, to reveal that McWherter's continued incarceration in this case, beyond the "less-than-forty-percent" of his already significantly reduced sentence that he has served thus far, is appropriate. (*See,* Exhibit 1, McWherter BOP Public Information Inmate Data, at 3).

26

Against this backdrop, McWherter's simply has not shown that his circumstances present a "compelling" reason for release.

### 3.   The factors in 18 U.S.C. § 3553(a) weigh against McWherter's early release.

Even when an inmate has shown "extraordinary and compelling reasons," he is still not entitled to compassionate release. Before ordering relief, the Court must consider the factors set forth in 18 U.S.C. § 3553(a) and determine that release is appropriate. 18 U.S.C. § 3582(c)(1)(A). A defendant's failure to establish that the § 3553(a) factors support relief is an independent basis for denying compassionate release. *United States v. Ruffin*, 978 F.3d 1000, 1008–09 (6th Cir. 2020); *accord United States v. Austin*, 825 F. App'x 324, 325–27 (6th Cir. 2020) (upholding a district court's denial of compassionate release based on the § 3553(a) factors); *United States v. Kincaid*, 802 F. App'x 187, 188–89 (6th Cir. 2020) (same).

Here, even if the Court were to find McWherter has established extraordinary and compelling reasons for his release, the § 3553(a) factors should still disqualify him.

McWherter was convicted and sentenced for being a leader within major drug trafficking and money laundering conspiracies, and has

27

served decidedly less than half (36.9%) of his sentence. (*See,* Exhibit 1, McWherter BOP Public Information Inmate Data, at 2, 3). Regardless of the present pandemic, the factors that justified his incarceration for committing those serious offenses apply just as strongly now as they did at sentencing. As another judge in this district explained, releasing a defendant who committed an "undeniably serious" offense, and who has "only serv[ed] about a third of his sentence," "would not promote respect for the law or proper deterrence, provide just punishment, and avoid unwarranted sentencing disparities." *Knight*, 2020 WL 3055987, at *3; *accord, Kincaid*, 802 F. App'x at 188–89.

The Sixth Circuit has similarly, repeatedly upheld the denial of compassionate release under § 3553(a) when a defendant has a long remaining sentence, including in a recent published decision. *Ruffin*, 978 F.3d at 1008; *accord Kincaid*, 802 F. App'x at 188–89; *Austin*, 825 F. App'x at 326; *see also United States v. Kincaid*, 805 F. App'x 394, 395–96 (6th Cir. 2020) ("[W]e don't think [the defendant] raises a close question."). This is because the original sentence already reflects the district court's evaluation of "the need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote

respect for the law" under § 3553(a). *Kincaid*, 802 F. App'x at 188; *accord Ruffin*, 978 F.3d at 1008.

The plain language of the compassionate-release statute makes the point even more directly: it requires that a defendant's reasons for release "warrant such a reduction" in his sentence. 18 U.S.C. § 3582(c)(1)(A)(i). As such, that inquiry depends, at least in part, on the length of time remaining on the defendant's sentence, and requires him to justify the magnitude of his requested sentence reduction. *Id.* So a defendant like McWherter, more than sixty-percent (60%) of his sentence remaining, must comparably show that his reasons for release are so powerful and compelling that they "warrant" a "reduction" of that size and magnitude. *Id.*

In addition to the serious nature of McWherter's convictions and the aggravated role he played in his crimes, he also has the clear majority of his sentence yet to serve. Each of those factors weigh heavily against his early release. Taking into account the same § 3553 factors that this Court fairly balanced at McWherter's sentencing to arrive at his significantly reduced, below guidelines sentence in this matter, McWherter should now be left to serve the remainder of his sentence.

**IV.    If the Court were to grant McWherter's motion, it should order a 14-day quarantine before release.**

If the Court were inclined to grant McWherter's motion despite the government's arguments above, the Court should order that he be subjected to a 14-day quarantine before release.

## Conclusion

McWherter's motions should be denied.

Respectfully submitted,

MATTHEW SCHNEIDER
United States Attorney


*s/ Carl D. Gilmer-Hill*
Carl D. Gilmer-Hill
Assistant United States Attorney

Dated:  January 28, 2021

30